# [2] Permission to Intervene (Alaska Case 1:22-cv-00001-SLG /PILF v Meyer)

Unstar conversation

From:SAddress optionsSpeedster21@protonmail.com <Speedster21@protonmail.com>
 Forwarded
Unstar message
To:NAddress
optionsnjohnson@PublicInterestLegal.org <njohnson@PublicInterestLegal.org>MAddress
optionsmriordan@PublicInterestLegal.org <mriordan@PublicInterestLegal.org>KAddress
optionskphillips@PublicInterestLegal.org <kphillips@PublicInterestLegal.org>TOAddress
optionsTom Oels <blake@mtaonline.net>

------- Original Message -------
On Monday, February 28th, 2022 at 9:30 PM, Speedster21 <Speedster21@protonmail.com> wrote:

Thank you for your interest and efforts to help the State of Alaska clean-up the State Voter Registration. I am a member of an "unincorporated" assembly of Alaskan qualified voters with the sole purpose of fixing and repairing our system of elections, starting with 2020G. The first task is to remove all of the unqualified voters from the registration rolls. The second is to get the State to recognize that until the term for the House of Representatives is changed, all of our Statewide Elections are indeed "federal."

Our state has been automatically registering Permanent Fund applicants to vote, in addition to the Department of Vehicle Registration (and other opportunities to register). The current proposed legislation, yet in draft form, will codify this additional means of voter registration. As a result, any alteration creates another registration that adds to the chaos. State officials estimate that there is an excess of 45,000 registrations. Our estimates suggest that number is greater than double the admitted number, so this opportunity for assistance is a godsend.

I and Thomas Oels have left multiple messages in our attempt to contact your PILF team, but neither of us have received a response and are now, out of time.

Our State was challenged to alter our election procedures on other grounds by third party "Grifters" for lack of a better handle and proceeded to court to argue the merits of their demands. Arctic Village was decided after the decision in Andino was published. It appears state officials submitted a joint "proposed" document waiving the "witness requirement" for all absentee/by-mail ballots, that was accepted by the respective Courts (one decision by the Superior Court and two decisions by the State Supreme Court). Clearing the rubble off the voter registration list, lightens the tasks that depend on knowing the list is verifiable and therefore trustworthy.

It is our hope that our intervention does not alter the course of your requests and a second copy of a clean list poses no further burden for your team. Thank you for your consideration in this matter, Pam Bickford

P.S. I have included Tom Oels' contact email.

Sent with ProtonMail Secure Email.

IN THE SUPREME COURT OF THE STATE OF ALASKA

FILED
STATE OF ALASKA
APPELLATE COURTS
2022 FEB 16 PM 1:57
CLERK APPELLATE COURT
BY____
DEPUTY CLERK


Alexander, Michael R.        )
Armour, Michael T.           )
Bickford, Pamela L.          )
De Schweinitz, William C.    )        Supreme Court No.
Howard, Lucas D.             )
Jackson, Randall G.          )
Johnson, David Howard        )
Miessner, Steven W.          )
Nash, Kelly Lee              )        S-18325
Oels, Thomas W.              )
Sheldon-Lee, Holly J.        )
Thurman, Loy A.              )
Tyndall, Barbara B.          )
                             )
        Petitioners,         )
                             )
        v.                   )
                             )
MICHAEL JAMES DUNLEAVY, in his official )
capacity as the Governor of the State   )
of Alaska; the ALASKA DEPARTMENT OF      )
ADMINISTRATION; KEVIN MEYER, in his      )
official  capacity as the Lieutenant     )
Governor of the State of Alaska;         )
TREG TAYLOR, in his official capacity     )
as the Attorney General of the State of  )
Alaska; the ALASKA DEPARTMENT OF LAW;    )
GAIL FENUMIAI, in her official capacity  )
as the Director of the Alaska Division   )
of Elections; the ALASKA DIVISION OF     )
ELECTIONS; the STATE OF ALASKA,          )
        Respondents.                     )
_____   )

Original Application

## Amended Certification of Service

Petitioners filed this case February 15, 2022, with the intention of completing the service as planned. Due to unforeseen complications, the service was accomplished this morning, February

Exhibit PLB-1
Page 2 of 52

16, 2022, before 10:30 am by Petitioners Thomas Oels and William de Schweinitz. Pictures as proof of service:



## Affidavit of Pamela L. Bickford

I do solemnly swear or affirm that the facts listed below are true to the best of my knowledge. Petitioner William de Schweinitz sent the pictures above of Petitioner Thomas Oels serving our documents to the Office of Governor Michael J. Dunleavy, on February 16, 2022.

_2-16-2022_
Date

_Pamela L. Bickford_
Signature of Person Making this Affidavit

_Pamela Bickford_
Printed Name

Exhibit _PLB-1_
Page _3_ of _52_

CERTIFICATE OF SERVICE

I certify that I delivered a copy of this document to the participants of Alexander, Michael R., et. al., v. Governor Dunleavy, et. al., filed on February 16, 2022, at the following address:

Dated __2-16-22__                    _Pamela L. Bickford_
                                     Pamela L. Bickford, Pro Se Clerk


**GOVERNOR MICHAEL J. DUNLEAVY**
**LT. GOVERNOR KEVIN MEYER**
**ATTORNEY GENERAL TREG TAYLOR**
**DIRECTOR OF ELECTIONS GAIL FENUMIAI**
Suite 1700
550 West 7th Avenue
Anchorage, Alaska 990501


CERTIFICATE OF FONT AND FONT SIZE

I certify that this document was created in Courier font and using at least a 12-point typeface.

_Pamela L. Bickford_
Pamela L. Bickford, Pro Se Clerk

Exhibit _PLB- 1_
Page _4_ of _52_



**Supreme Court**

**Court of Appeals**

**State of Alaska**

MEREDITH MONTGOMERY
Clerk of Court

303 K Street
ANCHORAGE, ALASKA
99501-2084
(907) 264-0612

RYAN MONTGOMERY-SYTHE
Chief Deputy Clerk

February 16, 2022

Michael R. Alexander
Michael T. Armour
Pamela L. Bickford
William C. De Schweinitz

Lucas D. Howard
Randall G. Jackson
David Howard Johnson
Steven W. Miessner

Kelly Lee Nash
Thomas W. Oels
Holly J. Sheldon-Lee
Loy A. Thurman
Barbara B. Tyndall

*Via Email*

Re:     Original Application and related papers

Dear Sirs and Madams:

The Appellate Clerk's Office received your original application and other papers
on February 15, 2022. I am returning these documents to you because they do not
comply with Appellate Rule 404. Under this rule an original application may be filed
with the supreme court "whenever relief is not available from any other court. [. . .]." The
relief that you are requesting on pages 24-25 of your application should be sought at
either an administrative level, or in the superior court. Because relief is available in one
or both of those forums, nothing can be filed in the supreme court in the first instance.

Your original paperwork is available for pick up in the Appellate Clerk's Office.
If it is not picked up within 10 days, it will be mailed to Pamela L. Bickford, pro se clerk,
at the address provided.

Sincerely,

*M. Montgomery*

Meredith Montgomery

cc:    Treg Taylor, Attorney General, *via email*
       Attorney General's Office, *via email*

Exhibit *PLB-1*
Page *5* of *52*

FILED
STATE OF ALASKA
APPELLATE COURTS
2022 FEB 15 PM 1:32
CLERK APPELLATE COURT
BY_____
DEPUTY CLERK



IN THE SUPREME COURT OF THE STATE OF ALASKA

Alexander, Michael R.        )
Armour, Michael T.           )
Bickford, Pamela L.          )
De Schweinitz, William C.    )        Supreme Court No.
Howard, Lucas D.             )
Jackson, Randall G.          )
Johnson, David Howard        )
Miessner, Steven W.          )
Nash, Kelly Lee              )        S-
Oels, Thomas W.              )
Sheldon-Lee, Holly J.        )
Thurman, Loy A.              )
Tyndall, Barbara B.          )
                             )
        Petitioners,         )
                             )
        v.                   )
                             )
MICHAEL JAMES DUNLEAVY, in his official )
capacity as the Governor of the State  )
of Alaska; the ALASKA DEPARTMENT OF     )
ADMINISTRATION; KEVIN MEYER, in his     )
official  capacity as the Lieutenant    )
Governor of the State of Alaska;        )
TREG TAYLOR, in his official capacity    )
as the Attorney General of the State of )
Alaska; the ALASKA DEPARTMENT OF LAW;   )
GAIL FENUMIAI, in her official capacity  )
as the Director of the Alaska Division   )
of Elections; the ALASKA DIVISION OF     )
ELECTIONS; the STATE OF ALASKA,          )
        Respondents.                     )
_____)
                    Original Application

REPORT TO COURT

Exhibit *PLB-1*
Page 6 of 52

1

Signatory Contact Information for Petitioners.

Dated _____        Respectfully submitted,

Alexander, Michael R.
P.O. Box 521171
Big Lake, Alaska 99652
728@gmail.com
(907) 982-8902

_____
Michael R. Alexander

Armour, Michael T.
P.O. Box 1125
Haines, Alaska 99827
midnitMike@hotmail.com
(907) 303-0062

_____
Michael T. Armour

Bickford, Pamela L.
16840 Tide View Drive
Anchorage, Alaska 99516
Speedster21@protonmail.com
(907) 223-8829

_____
Pamela L. Bickford

De Schweinitz, William C.
1530 Gambell Street
Anchorage, Alaska 99501
WilliamZ@ak.net
(907) 884-7001

_____
William C. De Schweinitz

Howard, Lucas D.
8580 Highlander Circle
Palmer, Alaska 99645
Info@907Freedom.org
(503) 949-2963

_____
Lucas D. Howard

Jackson, Randall G.
P.O. Box 867
503 Small Tracts Rd.
Haines, Alaska 99827
PappyFrost@yahoo.com
(907) 314-0213

_____
Randall G. Jackson

Johnson, David Howard
6360 East Homebuilt Circle
Wasilla, Alaska 99654
Dhjohnson113@mtaonline.net
(907) 232-6867

_____
David H. Johnson

Exhibit PLB-1
Page 7 of 52

2

Miessner, Steven W.
7811 Wandering Drive
Anchorage, Alaska 99502
Steve.alaskacomputer@gmail.com
(907) 632-0635

_____
Steven W. Miessner

Nash, Kelly Lee
1225 Kennicott Avenue
Fairbanks, Alaska 99701
KellyN1112@gmail.com
(907) 388-9710

_____
Kelly Lee Nash

Oels, Thomas W.
2841 W. Discovery Loop
Wasilla, Alaska 99654
Blake@mtaonline.net
(907) 232-6782

_____
Thomas W. Oels

Sheldon-Lee, Holly J.
P.O. Box 1
Talkeetna, Alaska 99676
AlaskanJustice4@gmail.com
(907) 232-4063

_____
Holly J. Sheldon-Lee

Thurman, Loy A.
P.O. Box 520011
Big Lake, Alaska 99652
Loythurman@outlook.com
(907) 775-8899

_____
Loy A. Thurman

Tyndall, Barbara B.
P.O. Box 82977
Fairbanks, Alaska 99708
Btbt48@gmail.com
(907) 388-0146

_____
Barbara B. Tyndall

3

FILED
STATE OF ALASKA
APPELLATE COURTS

2022 FEB 16 AM 9: 30

CLERK APPELLATE COURT

BY_____
DEPUTY CLERK



IN THE SUPREME COURT OF THE STATE OF ALASKA

Alexander, Michael R. )
Armour, Michael T. )
Bickford, Pamela L. )
De Schweinitz, William C. )
Howard, Lucas D. )
Jackson, Randall G. )
Johnson, David Howard )
Miessner, Steven W. )
Nash, Kelly Lee )
Oels, Thomas W. )
Sheldon-Lee, Holly J. )
Thurman, Loy A. )
Tyndall, Barbara B. )
)
      Petitioners, )
)
      v. )
)
MICHAEL JAMES DUNLEAVY, in his official )
capacity as the Governor of the State )
of Alaska; the ALASKA DEPARTMENT OF )
ADMINISTRATION; KEVIN MEYER, in his )
official capacity as the Lieutenant )
Governor of the State of Alaska; )
TREG TAYLOR, in his official capacity )
as the Attorney General of the State of )
Alaska; the ALASKA DEPARTMENT OF LAW; )
GAIL FENUMIAI, in her official capacity )
as the Director of the Alaska Division )
of Elections; the ALASKA DIVISION OF )
ELECTIONS; the STATE OF ALASKA, )
      Respondents. )
_____)

Supreme Court No.

S-

2/16/22

REFUSED FOR FILING
See 2/16/22
letter. Does
not comply
with App.R.
404.
M. Montgomery
Clerk

Original Application

## (1) MOTION TO RELAX COURT RULES AND ACCEPT OVERLENGTH ORIGINAL APPLICATION (AP RULE 404) and RELATED EMERGENCY MOTIONS

    Petitioners, representing ourselves and those yet unknown qualified voters of "We the People of the State of Alaska," ("We") respectfully request that this Court accept the overlength Original Application and the related motions as follows:

1

Exhibit PLB-1
Page 9 of 52

1) Preliminary Motion to Relax Court Rules and Accept Overlength Original Application and Related Motions

2) Preliminary Motion to Waive Court fees and Expenses

3) Preliminary Motion for Judicial Disqualification

4) Preliminary Motion to Preserve All 2020 Election Records

5) Preliminary Motion to Identify All Qualified Alaskan Voters

6) Preliminary Notice to Stay
   a. S-17629, *Kevin Meyer, et al., v. Alaskans for Better Elections*, No. 7460 — June 12, 2020. Superior Court No. 3AN-19-09704CI (Judge Yvonne Lamoureux (on 2020 ballot)).

   b. S-17902, *State of Alaska, et. al., v. Arctic Village Council*, et. al., No. 7556 — September 17, 2021; and S-17902 Order of October 12, 2020. Superior Court No. 3AN-20-07858 CI (Judge Dani Crosby (on 2020 ballot)).

   c. S-18210, *Kohlhaas, et. al., v. State of Alaska, et. al.*, Order of January 19, 2022. Superior Court No. 3AN-20-09532 CI (Judge Gregory Miller (on 2020 ballot)).

7) Preliminary Notice to Stay Cast/Count Electronic Equipment Suspended until Completion of Citizen's Compliance Review

8) Preliminary Notice to Stay Cast/Count Absentee Ballots Suspended until Completion of Citizen's Compliance Review

9) Preliminary Motion to Stay the Final Redistricting Decision

10a) Original Application to Consolidate Citizen Complaints as a "Citizens Compliance Review" (regarding both Procedural and Substantive Due Process Issues of the 2020 General Election).

10b) Original Application to Report to Court admissible findings and evidence of procedural and substantive non-compliance to justify the reversal and remand of Supreme Court Cases and other relief.

   This request is warranted by the complexity of the case and the significance of the case — which concerns the fundamental right of every qualified voter in Alaska to cast their vote, in a free and fair election, and every qualified person who votes knows their

2

Exhibit PLB-1
Page 10 of 52

cast ballot is counted in a manner that must comport with the constitutionally protected due process of law, by both the State Constitution and the United States Constitution.

Petitioners, the individuals of our unincorporated association are located across the State of Alaska, and some don't have modern electronic equipment or access to office services. Petitioners, representatives, will endeavor to adhere, as best we can, to Court Rules during our brief appearance in this Court. Our filings were organized to facilitate resolution of multiple erroneous cases. Our intervention is to provide the respite necessary to access the Administrative Procedures Act complaint procedures to resolve our questions and concerns about non-compliance with the "federal" "minimum requirements" upon which determines our confidence in our voting system. The administrative procedures will provide the opportunity to compose a record of admissible evidence and thereby correct the failures of the 2020 General Election.

For these reasons, Petitioners respectfully request the Court grant this motion and accept our intervention to correct our government's failure to conduct a federal election as required by our State Constitution and the Constitution of the United States.


Dated _____        Respectfully submitted,


                                   _____
                                     Michael R. Alexander

                                   Exhibit _PLB-1_
3                                  Page _11_ of _52_

_____
Michael T. Armour

_____
Pamela L. Bickford

_____
William C. De Schweinitz

_____
Lucas D. Howard

_____
Randall G. Jackson

_____
David H. Johnson

_____
Steven W. Miessner

_____
Kelly Lee Nash

_____
Thomas W. Oels

_____
Holly J. Sheldon-Lee

_____
Loy A. Thurman

_____
Barbara B. Tyndall

4

Exhibit _PLB_-1
Page _12_ of _52_

FILED
STATE OF ALASKA
APPELLATE COURTS

IN THE SUPREME COURT OF THE STATE OF ALASKA

CLERK APPELLATE COURT
BY_____
DEPUTY CLERK

| | |
|---|---|
| Alexander, Michael R. | ) |
| Armour, Michael T. | ) |
| Bickford, Pamela L. | ) Supreme Court No. |
| De Schweinitz, William C. | ) |
| Howard, Lucas D. | ) |
| Jackson, Randall G. | ) |
| Johnson, David Howard | ) |
| Miessner, Steven W. | ) |
| Nash, Kelly Lee | ) S- |
| Oels, Thomas W. | ) |
| Sheldon-Lee, Holly J. | ) |
| Thurman, Loy A. | ) |
| Tyndall, Barbara B. | ) |
|            Petitioners, | ) |
| | ) |
|            v. | ) |
| | ) |
| MICHAEL JAMES DUNLEAVY, in his official | ) |
| capacity as the Governor of the State | ) |
| of Alaska; the ALASKA DEPARTMENT OF | ) |
| ADMINISTRATION; KEVIN MEYER, in his | ) |
| official  capacity as the Lieutenant | ) |
| Governor of the State of Alaska; | ) |
| TREG TAYLOR, in his official capacity | ) |
| as the Attorney General of the State of | ) |
| Alaska; the ALASKA DEPARTMENT OF LAW; | ) |
| GAIL FENUMIAI, in her official capacity | ) |
| as the Director of the Alaska Division | ) |
| of Elections; the ALASKA DIVISION OF | ) |
| ELECTIONS; the STATE OF ALASKA, | ) |
|            Respondents. | ) |

Original Application

2/16/22
REFUSED FOR FILING

See 2/16/22
letter. Does
not comply
with App R.
404.
M. Montgomery

## 5) **EMERGENCY PRELIMINARY MOTION TO IDENTIFY ALL QUALIFIED VOTERS** (National Voter Registration Act, 52 U.S.C. § 20507)

Petitioners, as Representatives for the class identified as "We the People of the State of Alaska" through an unincorporated association to intervene on behalf of each qualified voter signing these documents, and on behalf of the unidentified class of

1

Exhibit PLB-1
Page 13 of 52

qualified voters – "the real parties in interest," in accordance with Alaska Court Rule 17, to represent the class of qualified voters who voted in the General Election of 2020.

Rule 17 requires that every "action shall be prosecuted in the name of the real party in interest" and Rule 17(d) Unknown Parties provides:

> "All persons who are or may be interested in the subject matter of an action relating to real property in the state whose names cannot be ascertained after diligent inquiry may be made parties by being named and described as unknown claimants or unknown owners, or as unknown heirs, devisees, legatees, or assigns of any deceased person who may have been interested in the subject matter of the action.
> If it cannot be ascertained after diligent inquiry whether a person who is or may be interested in the subject matter of the action is alive or dead, or what disposition may have been made of the person's interests, or where the person resides if alive, the person and everyone claiming under the person may be made a party by naming the person….."

AS 15.07.125. Official registration list, provides:

> The director shall prepare an official registration list for each election consisting of the names of (1) all voters whose registrations are not inactive; and (2) all voters whose names are required to be placed on the list by AS 15.07.070(c) or (d). A list of persons eligible to vote in each precinct at that election shall be prepared from the official registration list.

The National Voter Registration Act, 52 U.S.C. § 20507, overlaps the retention requirements of 52 USC § 20701, but differ in that the term for retention of the NVRA is two years (not twenty-two months), and differ in federal civil/criminal sanctions. Due to ongoing controversy as to the State mandatory

requirements, the current text of 52 U.S.C. § 20507 is inserted
without revision in this motion to provide documentation of the
federal requirements under the NVRA (the font is Ariel 11):

## §20507. Requirements with respect to administration of voter registration

### (a) In general

In the administration of voter registration for elections for Federal office, each State shall—

(1) ensure that any eligible applicant is registered to vote in an election—

(A) in the case of registration with a motor vehicle application under section 20504 of this title, if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(B) in the case of registration by mail under section 20505 of this title, if the valid voter registration form of the applicant is postmarked not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(C) in the case of registration at a voter registration agency, if the valid voter registration form of the applicant is accepted at the voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election; and

(D) in any other case, if the valid voter registration form of the applicant is received by the appropriate State election official not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(2) require the appropriate State election official to send notice to each applicant of the disposition of the application;

(3) provide that the name of a registrant may not be removed from the official list of eligible voters except—

(A) at the request of the registrant;

(B) as provided by State law, by reason of criminal conviction or mental incapacity; or

(C) as provided under paragraph (4);

(4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—

(A) the death of the registrant; or

(B) a change in the residence of the registrant, in accordance with subsections (b),(c),and (d);

(5) inform applicants under sections 20504, 20505, and 20506 of this title of—

(A) voter eligibility requirements; and

(B) penalties provided by law for submission of a false voter registration application; and

(6) ensure that the identity of the voter registration agency through which any particular voter is registered is not disclosed to the public.

### (b) Confirmation of voter registration

Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office—

(1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.) [now 52 U.S.C. 10301 et seq.]; and

(2) shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote,

except that nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsections (c) and (d) to remove an individual from the official list of eligible voters if the individual—

    (A) has not either notified the applicable registrar (in person or in writing) or responded during the period described in subparagraph (B) to the notice sent by the applicable registrar; and then

    (B) has not voted or appeared to vote in 2 or more consecutive general elections for Federal office.

## (c) Voter removal programs

    (1) A State may meet the requirement of subsection (a)(4) by establishing a program under which—

    (A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and

    (B) if it appears from information provided by the Postal Service that—

    (i) a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or

    (ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

    (2)(A) A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters.

    (B) Subparagraph (A) shall not be construed to preclude—

    (i) the removal of names from official lists of voters on a basis described in paragraph (3)(A) or (B) or (4)(A) of subsection (a); or

    (ii) correction of registration records pursuant to this chapter.

## (d) Removal of names from voting rolls

    (1) A State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant—

    (A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or

    (B)(i) has failed to respond to a notice described in paragraph (2); and

    (ii) has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

    (2) A notice is described in this paragraph if it is a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, together with a notice to the following effect:

    (A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that

Exhibit _PLB-1_
Page _16_ of _52_

**4**

occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

(B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

(3) A voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with this subsection.

## (e) Procedure for voting following failure to return card

(1) A registrant who has moved from an address in the area covered by a polling place to an address in the same area shall, notwithstanding failure to notify the registrar of the change of address prior to the date of an election, be permitted to vote at that polling place upon oral or written affirmation by the registrant of the change of address before an election official at that polling place.

(2)(A) A registrant who has moved from an address in the area covered by one polling place to an address in an area covered by a second polling place within the same registrar's jurisdiction and the same congressional district and who has failed to notify the registrar of the change of address prior to the date of an election, at the option of the registrant—

(i) shall be permitted to correct the voting records and vote at the registrant's former polling place, upon oral or written affirmation by the registrant of the new address before an election official at that polling place; or

(ii)(I) shall be permitted to correct the voting records and vote at a central location within the same registrar's jurisdiction designated by the registrar where a list of eligible voters is maintained, upon written affirmation by the registrant of the new address on a standard form provided by the registrar at the central location; or

(II) shall be permitted to correct the voting records for purposes of voting in future elections at the appropriate polling place for the current address and, if permitted by State law, shall be permitted to vote in the present election, upon confirmation by the registrant of the new address by such means as are required by law.

(B) If State law permits the registrant to vote in the current election upon oral or written affirmation by the registrant of the new address at a polling place described in subparagraph (A)(i) or (A)(ii)(II), voting at the other locations described in subparagraph (A) need not be provided as options.

(3) If the registration records indicate that a registrant has moved from an address in the area covered by a polling place, the registrant shall, upon oral or written affirmation by the registrant before an election official at that polling place that the registrant continues to reside at the address previously made known to the registrar, be permitted to vote at that polling place.

## (f) Change of voting address within a jurisdiction

In the case of a change of address, for voting purposes, of a registrant to another address within the same registrar's jurisdiction, the registrar shall correct the voting registration list accordingly, and the registrant's name may not be removed from the official list of eligible voters by reason of such a change of address except as provided in subsection (d).

## (g) Conviction in Federal court

(1) On the conviction of a person of a felony in a district court of the United States, the United States attorney shall give written notice of the conviction to the chief State election official designated under section 20509 of this title of the State of the person's residence.

(2) A notice given pursuant to paragraph (1) shall include—

(A) the name of the offender;

(B) the offender's age and residence address;

Exhibit _PLB-1_
Page _17_ of _52_

(C) the date of entry of the judgment;
(D) a description of the offenses of which the offender was convicted; and
(E) the sentence imposed by the court.

(3) On request of the chief State election official of a State or other State official with responsibility for determining the effect that a conviction may have on an offender's qualification to vote, the United States attorney shall provide such additional information as the United States attorney may have concerning the offender and the offense of which the offender was convicted.

(4) If a conviction of which notice was given pursuant to paragraph (1) is overturned, the United States attorney shall give the official to whom the notice was given written notice of the vacation of the judgment.

(5) The chief State election official shall notify the voter registration officials of the local jurisdiction in which an offender resides of the information received under this subsection.

**(h) Omitted**

**(i) Public disclosure of voter registration activities**

(1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

(2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

**(j) "Registrar's jurisdiction" defined**

For the purposes of this section, the term "registrar's jurisdiction" means—

(1) an incorporated city, town, borough, or other form of municipality;

(2) if voter registration is maintained by a county, parish, or other unit of government that governs a larger geographic area than a municipality, the geographic area governed by that unit of government; or

(3) if voter registration is maintained on a consolidated basis for more than one municipality or other unit of government by an office that performs all of the functions of a voting registrar, the geographic area of the consolidated municipalities or other geographic units.

(Pub. L. 103–31, §8, May 20, 1993, 107 Stat. 82; Pub. L. 107–252, title IX, §903, Oct. 29, 2002, 116 Stat. 1728.). **Editorial Notes References in Text**

The Voting Rights Act of 1965, referred to in subsec. (b)(1), is Pub. L. 89–110, Aug. 6, 1965, 79 Stat. 437, which is classified generally to chapters 103 (§10301 et seq.), 105 (§10501 et seq.), and 107 (§10701 et seq.) of this title. For complete classification of this Act to the Code, see Tables. **Codification**

Section was formerly classified to section 1973gg–6 of Title 42, The Public Health and Welfare, prior to editorial reclassification and renumbering as this section.

Section is comprised of section 8 of Pub. L. 103–31. Subsec. (h) of section 8 of Pub. L. 103–31 enacted section 3629 of Title 39, Postal Service, and amended sections 2401 and 3627 of Title 39.

**Amendments**

**2002**—Subsec. (b)(2). Pub. L. 107–252 inserted before period at end ", except that nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsections (c) and (d) to remove an individual from the official list of eligible voters if the individual—

"(A) has not either notified the applicable registrar (in person or in writing) or responded during the period described in subparagraph (B) to the notice sent by the applicable registrar; and then

"(B) has not voted or appeared to vote in 2 or more consecutive general elections for Federal office".

By this motion, Petitioners, request an "official registration list" of "active" qualified voters compiled prior to the General Election of November 2020, that will identify all other qualified voters who may have voted in the 2020 General Election and may have an interest in this litigation.

By this motion, Petitioners, request the list of persons removed from the "official registration of qualified voters" as a result of the requirements of 52 U.S.C. § 20507.

By this motion, Petitioners, request that the notification card sent to each qualified voter be sent and received by a third party, to ensure the "official registration list" is finally clear.

The "We the People of the State of Alaska" class continues to grow by signatures on the Declaration petition, but our outreach is limited to local events, and time is short. See Exhibit TO-10.

Dated _____

_____
Michael R. Alexander

_____
Michael T. Armour

_____
Pamela L. Bickford

_____
William C. De Schweinitz

_____
Lucas D. Howard

_____
Randall G. Jackson

_____
David H. Johnson

_____
Steven W. Miessner

_____
Kelly Lee Nash

_____
Thomas W. Oels

_____
Holly J. Sheldon-Lee

_____
Loy A. Thurman

_____
Barbara B. Tyndall

Case 1:22-cv-00001-SLG    Document 13-2    Filed 03/02/22    Page 20 of 26

# Appendix A: Descriptive Tables

## Voter Registration Table 1: Registration History

| State | Year | CVAP Total | Reported Registrations | Active Registrations | Active Regs. (% of CVAP) | Active Regs. (% of Total) | Inactive Registrations | Inactive Regs. (% of Total) |
|---|---|---|---|---|---|---|---|---|
| Alabama | 2020 | 3,731,336 | 3,717,798 | 3,438,213 | 92.1 | 92.5 | 279,585 | 7.5 |
| | 2018 | 3,688,249 | 3,465,352 | 3,164,301 | 85.8 | 91.3 | 301,051 | 8.7 |
| | 2016 | 3,653,381 | 3,333,946 | 3,049,655 | 83.5 | 91.5 | 139,638 | 4.2 |
| Alaska | 2020 | 535,151 | 848,093 | 595,647 | 111.7 | 92.2 | 50,446 | 7.8 |
| | 2018 | 531,889 | 624,467 | 571,851 | 107.6 | 91.6 | 52,616 | 8.4 |
| | 2016 | 528,248 | 587,303 | 528,671 | 100.1 | 90.0 | 58,632 | 10.0 |
| American Samoa [1], [2], [3] | 2020 | – | 16,341 | 16,341 | – | 100.0 | 0 | 0.0 |
| | 2018 | – | 15,527 | 8,462 | – | 54.5 | 7,065 | 45.5 |
| | 2016 | – | – | – | – | – | – | – |
| Arizona | 2020 | 5,137,474 | 4,728,109 | 4,275,729 | 83.2 | 90.4 | 452,380 | 9.6 |
| | 2018 | 4,895,706 | 4,276,891 | 3,715,624 | 75.9 | 86.9 | 561,267 | 13.1 |
| | 2016 | 4,710,448 | 4,080,680 | 3,589,084 | 76.2 | 88.0 | 491,596 | 12.0 |
| Arkansas | 2020 | 2,235,415 | 1,831,414 | 1,408,061 | 63.0 | 76.9 | 423,353 | 23.1 |
| | 2018 | 2,207,894 | 1,786,840 | 1,456,887 | 66.0 | 81.5 | 329,953 | 18.5 |
| | 2016 | 2,185,724 | 1,765,513 | 1,422,393 | 65.1 | 80.6 | 343,120 | 19.4 |
| California [4] | 2020 | 26,032,160 | 26,157,616 | 21,796,538 | 83.7 | 83.3 | 4,348,874 | 16.6 |
| | 2018 | 25,650,455 | 25,103,559 | 19,724,297 | 76.9 | 78.6 | 5,379,262 | 21.4 |
| | 2016 | 25,002,012 | 24,496,636 | 19,433,828 | 77.7 | 79.3 | 5,062,708 | 20.7 |
| Colorado | 2020 | 4,244,210 | 4,211,528 | 3,803,762 | 89.6 | 90.3 | 407,766 | 9.7 |
| | 2018 | 4,057,437 | 3,953,613 | 3,426,499 | 84.4 | 86.7 | 527,114 | 13.3 |
| | 2016 | 3,896,986 | 3,840,303 | 3,336,663 | 85.6 | 86.9 | 503,640 | 13.1 |
| Connecticut | 2020 | 2,619,474 | 2,524,717 | 2,335,860 | 89.2 | 92.5 | 188,857 | 7.5 |
| | 2018 | 2,611,667 | 2,369,335 | 2,193,586 | 84.0 | 92.6 | 175,749 | 7.4 |
| | 2016 | 2,584,884 | 2,331,684 | 2,162,797 | 83.7 | 92.8 | 168,887 | 7.2 |
| Delaware | 2020 | 725,178 | 739,672 | 711,287 | 98.1 | 96.2 | 28,385 | 3.8 |
| | 2018 | 709,999 | 695,014 | 672,632 | 94.7 | 96.8 | 22,382 | 3.2 |
| | 2016 | 697,148 | 675,663 | 642,334 | 92.1 | 95.1 | 33,329 | 4.9 |
| District of Columbia | 2020 | 536,768 | 625,683 | 517,890 | 96.5 | 82.8 | 107,793 | 17.2 |
| | 2018 | 510,514 | 617,046 | 511,633 | 100.2 | 82.9 | 105,413 | 17.1 |
| | 2016 | 504,242 | 493,287 | 493,287 | 97.8 | 100.0 | – | – |
| Florida | 2020 | 15,507,315 | 15,231,808 | 14,517,002 | 93.6 | 95.3 | 701,422 | 4.6 |
| | 2018 | 15,014,950 | 14,126,722 | 13,278,070 | 88.4 | 94.0 | 848,652 | 6.0 |
| | 2016 | 14,441,877 | 13,505,571 | 12,853,866 | 89.0 | 95.2 | 651,705 | 4.8 |

Exhibit PB-19
Page 1 of 2

Exhibit PLB-1
Page 21 of 52

Case 1:22-cv-00001-SLG   Document 13-2   Filed 03/02/22   Page 21 of 26

# Voter Registration Table 4: Voter List Maintenance – Confirmation Notices

| State | Confirmation Notices Sent | | Result of Confirmation Notice | | | | | |
| | | | Received Confirmation From Voter | | | | Confirmation Returned as Undeliverable | |
| | | | Valid | | Invalid | | | |
| | Total | % Active Voters | Total | % | Total | % | Total | % |
|---|---|---|---|---|---|---|---|---|
| Alabama [1] | – | – | 1,826 | – | 25,755 | – | 3 | – |
| Alaska | 91,667 | 15.4 | 1,108 | 1.2 | – | – | 30,692 | 33.5 |
| American Samoa | 4,741 | 29.0 | 4,741 | 100.0 | 0 | 0.0 | 0 | 0.0 |
| Arizona | 2,480,620 | 58.0 | 75,275 | 3.0 | 422,919 | 17.0 | 328,151 | 13.2 |
| Arkansas | 432,798 | 30.7 | 89,906 | 20.8 | 33,312 | 7.7 | 45,003 | 10.4 |
| California [2] | 6,682,339 | 30.7 | 609,638 | 9.1 | 557,041 | 8.3 | 477,436 | 7.1 |
| Colorado | 705,625 | 18.6 | 13,885 | 2.0 | 14,104 | 2.0 | – | – |
| Connecticut | 178,993 | 7.7 | 55,787 | 31.2 | 92,022 | 51.4 | 25,292 | 14.1 |
| Delaware [3] | 89,271 | 12.6 | – | – | – | – | – | – |
| District of Columbia [4] | 571,363 | 110.3 | 26,306 | 4.6 | 15,582 | 2.7 | 72,114 | 12.6 |
| Florida | 1,295,491 | 8.9 | 121,655 | 9.4 | 142,275 | 11.0 | 219,736 | 17.0 |
| Georgia | 1,060,235 | 14.7 | 72,979 | 6.9 | 4,018 | 0.4 | 186,456 | 17.6 |
| Guam | 5,874 | 10.5 | – | – | – | – | 1,153 | 19.6 |
| Hawaii [5] | 101,013 | 13.3 | 14,576 | 14.4 | 4,271 | 4.2 | – | – |
| Idaho | 36,438 | 3.5 | 2,912 | 8.0 | – | – | 315 | 0.9 |
| Illinois | 5,106,813 | 56.1 | 333,135 | 6.5 | 181,526 | 3.6 | 457,373 | 9.0 |
| Indiana [6] | – | – | – | – | – | – | – | – |
| Iowa [7] | 123,320 | 5.9 | – | – | – | – | – | – |
| Kansas | 227,808 | 12.9 | 9,203 | 4.0 | 43,892 | 19.3 | 16,588 | 7.3 |
| Kentucky [8] | 366,101 | 11.0 | – | – | – | – | – | – |
| Louisiana [9] | 325,975 | 11.0 | – | – | – | – | – | – |
| Maine [10] | 2,147 | 0.2 | 0 | 0.0 | 733 | 34.1 | – | – |
| Maryland [11] | 238,027 | 5.7 | 3,587 | 1.5 | 436 | 0.2 | – | – |
| Massachusetts [12] | 808,891 | 13.8 | – | – | – | – | – | – |
| Michigan | 207,229 | 2.9 | 1,143 | 0.6 | 27,214 | 13.1 | 20,030 | 9.7 |
| Minnesota [13] | – | – | – | – | – | – | – | – |
| Mississippi | 82,826 | 4.2 | – | – | – | – | – | – |
| Missouri [14] | 381,716 | 9.6 | 149,017 | 39.0 | 39,299 | 10.3 | 78,034 | 20.4 |
| Montana | 107,111 | 15.8 | 8,491 | 7.9 | 2,344 | 2.2 | 26,537 | 24.8 |
| Nebraska | 160,117 | 13.7 | 27,030 | 16.9 | 24,931 | 15.6 | 21,046 | 13.1 |
| Nevada [15] | 361,871 | 19.7 | 158,854 | 43.9 | 26,222 | 7.2 | 153,156 | 42.3 |
| New Hampshire [16] | 15,180 | 1.4 | 112 | 0.7 | – | – | 4,834 | 31.8 |
| New Jersey [17] | 311,385 | 5.3 | – | – | – | – | – | – |
| New Mexico [18] | 136,426 | 10.9 | 0 | 0.0 | 3 | 0.0 | 9,348 | 6.9 |

Exhibit PB-19
Page 2 of 2

Exhibit PLB-
Page 22 of 52

Voter Registration: The NVRA and Beyond | 159

Case 1:22-cv-00001-SLG    Document 13-2    Filed 03/02/22    Page 22 of 26

A laska's election system has been plagued by bloated voter rolls for years. The mounting problem is rife for election fraud, especially with regards to absentee voting.

The difficulties are perhaps most clearly illustrated when contrasting Alaska's declining population with the state's burgeoning voter registration rolls. According to the Alaska Dept. of Labor and Workforce Development, the past five years have seen a steady decline in the state's overall population – dropping from 740,637 people in 2016 to just 728,903 in 2020. That's a net loss of 11,734 people.

During this same time period, however, the overall number of registered voters has ballooned by 66,976 – growing from 528,671 in 2016 to 595,647 in 2020.

## "From 2016 to 2020, Alaska lost 11,734 citizens but gained 66,976 new voters."

According to information on the Alaska Division of Elections website, during a seven month stretch leading up to the 2020 general election, from the beginning of the COVID lockdown in March through October, Alaska's voter rolls jumped by 23,731 voters. Additionally, according to a voter data base from the state, 36,550 new voter registrations were added for the calendar year 2020. Many Alaskans question these numbers given there was a global pandemic in which Alaska's population influx was impacted by the Canadian border shut down, heightened global travel restrictions and a reduction in military personnel transfers.

In attempting to explain how a state in steady decline has skyrocketing voter registration growth, Lt. Gov. Kevin Meyers said Alaska is unique in that it has a high population turnover each year. This is true. Fueled by military transfers and employment changes, between 2016 and 2020, Alaska has

Exhibit PLB-1
Page 23 of 52

Exhibit RA-7
Page 1 of 5

seen 147,729 new people enter the state, and 182,042 depart.

> *People who have moved away more than three years ago, and who never intend to return, can still cast Alaska ballots.*

Since Alaskans are allowed to remain on the state's voter rolls for up to four years after departing the state, this massive population shift creates serious problems when trying to determine who is actually a resident and therefore legally eligible to vote. It also means there are tens of thousands of people still on the state's voter rolls who no longer live or work in Alaska, many never to return.

Alaska's Lt. Gov. Kevin Meyer has acknowledged this growing problem. A few weeks after the 2020 general election he posted answers to a number of questions he had received about the security and integrity of the recent election.

Meyer explained that Alaska and federal law allows voters to remain registered in the state as they "intend to return." The state, however, has no way to tell if a voter "intends to return." According to Meyer, "when people move out of state and don't notify us, they stay on the rolls for as many as four years, further expanding our voter rolls." He also noted that, "Any registered Alaskan voter, regardless of location, can vote in our elections."

> *Nefarious actors could request that ballots be sent to them so long as they had enough of the voter's information on hand to request their ballot.*

Exhibit *PLB-1*
Page *24* of *52*

That means people who have moved away nearly four years

Exhibit *RA-7*
Page *2* of *5*

ago, and who never intend to return, can still cast Alaska ballots.

According to state law, Alaskans can remain registered voters if they leave the state for civil or military service, or because of marriage to someone engaged in civil or military service. They may also vote if they are absent for educational reasons, prison terms or because of navigating the high seas. According to state law, residency status does not change for any of the above situations unless a person has the "intent to remain in another place."

Having tens of thousands of "registered voters" who may or may not be Alaska residents creates a serious dilemma when it comes to absentee ballots. According to state law, any Alaskan can request an absentee ballot for any reason. A person (or their representative) must simply provide the voter's name, residence, mailing address, social security number, voter ID and date of birth. The state will then mail the absentee ballot to the designated address.

## *Hackers had access to many of the very items needed to request absentee ballots in someone else's name.*

If, however there are droves of "registered voters" who don't actually vote – as is the case in Alaska – nefarious actors could request that one or more of these ballots be sent to them so long as they had enough of the voter's information on hand to fraudulently request their ballot.

And this brings us to the last point. Weeks before the Nov. 3, 2020 election, hackers gained access to the Alaska Division of Elections voter registration system – accessing the personal data of 113,000 voters. The hackers had access the very items needed to request absentee ballots in someone else's name. This included: names, birth dates, last four digits of Social Security Numbers, driver's licenses, state issued identification numbers, residences, mailing addresses, registered political

Exhibit *PLB-1*
Page *25* of *52*

Exhibit *RA-7*
Page *3* of *5*

affiliations and email addresses.

Plus, the ability to cast fraudulent votes was made easier when, just weeks before the election, the Alaska Supreme Court ruled that Alaska could not enforce a law aimed at maintaining the integrity of absentee voting by requiring the signature of one witness to help verify the authentic identity of an absentee voter.

Additionally, this past spring a sophisticated cyber attack gained access to even more personal information of an unknown number of Alaskans when the state's Department of Health website was hacked. This stolen data included full names, birth dates, Social Security numbers, addresses, telephone numbers, driver's license numbers, case reports, protective service reports, Medicaid information, health information, financial data and more. This extensive data gives bad actors all the tools needed to unlawfully request absentee ballots be mailed to them in future elections.

Concern about Alaska's election system has prompted calls by a number of state legislators to reform and strengthen voting laws and policies. While Lt. Gov. Meyer, who is tasked with defending the integrity of elections, has so far ignored calls for a comprehensive audit of the 2020 elections, a handful of legislators (most notably Sen. Mike Shower) have introduced substantial bills to address mounting problems with Alaska's election process. To date, all of these measures remain in various legislative committees and have yet to even receive a vote.



Send Me The News!

Additionally, Rep. David Eastman launched an online petition

Exhibit _PLB-1_
Page _26_ of _52_

Exhibit _RA-7_
Page _4_ of _5_