**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

PUBLIC INTEREST LEGAL
FOUNDATION, INC.,

        Plaintiff,

    v.

NANCY DAHLSTROM, in her official
capacity as Lieutenant Governor for
the State of Alaska,[1]

        Defendant.

Case No. 1:22-cv-00001-SLG

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 40 is defendant Nancy Dahlstrom's, in her official capacity as Lieutenant Governor for the State of Alaska (hereinafter "Lieutenant Governor"), Motion to Dismiss for Failure to State a Claim. Plaintiff Public Interest Legal Foundation, Inc. ("Foundation"), responded in opposition at Docket 44, to which the Lieutenant Governor replied at Docket 47. Oral argument was not requested and was not necessary to the Court's determination.

---

[1] Kevin Meyer was the original named defendant, as he was the Lieutenant Governor when this action was filed. The current Lieutenant Governor, Nancy Dahlstrom, is automatically substituted as the defendant pursuant to Rule 25(d), Federal Rules of Civil Procedure.

## BACKGROUND[2]

This case involves a dispute over the extent to which the Alaska Division of Elections ("Division") must disclose data and records about deceased or potentially deceased registered voters pursuant to the disclosure provision of the National Voter Registration Act ("NVRA").[3] The Foundation describes itself as a "non-partisan, 501(c)(3) public interest organization" that "regularly utilizes the NVRA's Public Disclosure Provision" to review government records and data in order to "promote[] the integrity of elections nationwide."[4] The defendant is the Lieutenant Governor, who has been designated as Alaska's "chief State election official to be responsible for coordination of State responsibilities under [the NVRA]."[5]

Congress passed the NVRA in 1993 based on its findings that (1) "the right of citizens of the United States to vote is a fundamental right"; (2) "it is the duty of the Federal, State, and local governments to promote the exercise of that right"; and (3) "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and

---

[2] These background facts are drawn from the allegations in the Foundation's complaint, which the district court must take as true for the purposes of the Lieutenant Governor's motion to dismiss. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." (citation omitted)).

[3] 52 U.S.C. § 20507(i)(1).

[4] Docket 1 at 2, ¶ 4.

[5] 52 U.S.C. § 20509; *see also* Alaska Stat. § 15.10.105(a) (providing that the Lieutenant Governor "control[s] and supervise[s] the division of elections").

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 2 of 25

Case 1:22-cv-00001-SLG    Document 53    Filed 05/17/23    Page 2 of 25

disproportionately harm voter participation by various groups, including racial minorities."[6]  Congress further stated that the purposes of the NVRA are (1) "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office"; (2) "to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office"; (3) "to protect the integrity of the electoral process"; and (4) "to ensure that accurate and current voter registration rolls are maintained."[7]

Section 8 of the NVRA is entitled "Requirements with respect to administration of voter registration," and it directs the States to administer the voter registration lists to "ensure that any eligible applicant is registered to vote in an election."[8]  A registered voter "may not be removed from the official list of eligible voters" except "at the request of the registrant," "as provided by state law," or by "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" because of "the death of the registrant" or "a change in the residence of the registrant."[9]  Section 8(i) is the

---

[6] 52 U.S.C. § 20501(a)(1)–(3).

[7] 52 U.S.C. § 20501(b)(1)–(4).

[8] 52 U.S.C. § 20507(a)(1).

[9] 52 U.S.C. § 20507(a)(3)–(4).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 3 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 3 of 25

primary subject of this case. It is entitled "Public disclosure of voter registration activities" and provides:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.
>
> (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2)[10] are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.[11]

In an effort to ensure the accuracy of its list of eligible voters in accordance with the requirements of Section 8 of the NVRA, the State of Alaska ("State") is one of 31 states and the District of Columbia that are members of the Electronic Registration Information Center ("ERIC").[12] According to the Foundation, ERIC describes itself as "a non-profit organization with the sole mission of assisting states to improve the accuracy of America's voter rolls and increase access to

---

[10] Section 8(d) provides that a "State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant" either (1) "confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction" or (2) the registrant (i) "failed to respond to a notice" about voting and address changes, and (ii) has not voted, or appeared to vote, during a defined time period. 52 U.S.C. § 20507(d)(1)–(2).

[11] 52 U.S.C. § 20507(i).

[12] Docket 1 at 5, n.2. The number of member states is as of October 2021. Docket 1 at 5, n.2.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 4 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 4 of 25

voter registration for all eligible citizens."[13]  All member states sign an agreement

setting forth the terms and conditions of their ERIC membership.[14]  As it pertains

to this case, ERIC uses the Social Security Death Master File to identify voters

who have died and sends this information to the State; the State updates its voter

rolls accordingly.[15]  This file contains "the name, social security account number,

date of birth, and date of death of deceased individuals maintained by the

Commissioner of Social Security."[16]  Federal law limits access to this information

to certified entities.[17]  And pursuant to the ERIC membership agreement, the State

may not disclose any data it receives from ERIC without first obtaining a court

order.[18]

The events leading up to this case began on August 11, 2021, when the

Foundation sent a letter to the Division requesting certain information about

deceased voters.[19]  The Foundation requested (1) "All 'ERIC Data' received from

ERIC during the years 2019, 2020, and 2021 concerning registered voters

---

[13] Docket 1 at 4, ¶ 9.

[14] Docket 1 at 5, ¶ 14.

[15] Docket 1 at 7, ¶¶ 19–24.

[16] 42 U.S.C. § 1306c(d).

[17] *See* 42 U.S.C. § 1306c(b)(1)–(2) (describing certification program); 15 C.F.R. § 1110.102 (same).

[18] Docket 1 at 8, ¶ 25.

[19] Docket 1 at 10, ¶ 31.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 5 of 25

identified as deceased or potentially deceased"; and (2) "All reports and/or statewide-voter-registration-system-generated lists showing all registrants removed from the list of eligible voters for reason of death for the years 2019, 2020, and 2021. Such lists will optimally include unique voter identification numbers, county or locality, full names, addresses, and dates of birth."[20]

On September 16, 2021, the Division provided the Foundation with some, but not all, of the requested information.[21] The Division denied the first request for ERIC data concerning deceased and potentially deceased voters.[22] The Division explained that the source of this data is the Social Security Master Death File and that federal law permits disclosure only to certified entities.[23] With respect to the second request, the Division provided "a list of deceased voters [the Division] removed from the voter registration list" during the requested timeframe.[24] The list included an ascension number for each voter, which the Division explains is an identification number that is unique to each voter but is not the same as the voter

---

[20] Docket 1-1 at 1–2 (footnote omitted).

[21] Docket 1 at 10-11, ¶¶ 32–35; Docket 1-2.

[22] Docket 1-2 at 1.

[23] Docket 1-2 at 1 (first citing 42 U.S.C. § 1306c; and then citing 15 C.F.R. § 1110.102).

[24] Docket 1-2 at 1.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 6 of 25
Case 1:22-cv-00001-SLG    Document 53    Filed 05/17/23    Page 6 of 25

identification number.[25]   The Division also did not provide the removed voters' dates of birth based on its assertion that "that information is confidential."[26]

Four days later, on September 20, 2021, the Foundation sent the Division a Notice of NVRA Violation "for failure to permit inspection and reproduction of public records as required by the NVRA, 52 U.S.C. § 20507(i)(1)."[27]   The Foundation stated that the Division had unlawfully denied its first request for ERIC data concerning deceased and potentially deceased voters.[28]   And although the Division had granted the Foundation's second request in part by providing a "list of deceased voters [the Division] removed from the voter registration list between January 1, 2019 and August 11, 2021," the Division "did not include dates of birth in the list."[29]   The Foundation informed the Division that the letter was intended to serve as statutory notice in accordance with the NVRA's pre-litigation notice requirement set forth in 52 U.S.C. § 20510(b)(1)–(2).[30]   The Foundation's letter also presented an alternative solution to litigation, stating that it "believe[d] its request [could] be lawfully and amicably satisfied" if the Division provided the ERIC

---

[25] Docket 1-2 at 1; *see also* Docket 40 at 28–29.

[26] Docket 1-2 at 1 (first citing Alaska Stat. § 15.07.195; then citing *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016); and then citing *True the Vote v. Hosemann*, 43 F. Supp. 3d 692, 732–33 (S.D. Miss. 2014)).

[27] Docket 1-3 at 1.

[28] Docket 1-3 at 3.

[29] Docket 1-3 at 2.

[30] Docket 1-3 at 1.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 7 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 7 of 25

data with unique voter identification numbers, but redacted "SSN dates of birth, SSN dates of death, SSN death locations, and full/partial SSN numbers."[31] Beyond a recitation of the Foundation's original requests, this alternative solution and an accompanying rationale contain the only specific references to unique voter identification numbers in the Foundation's September 20, 2021 notice.[32]

Upon receipt of the Foundation's notice, the NVRA accorded the Lieutenant Governor 90 days to correct the alleged violation, a period that expired at the latest on January 2, 2022.[33] The Foundation did not receive a response.[34] On January 20, 2022, the Foundation filed its complaint with this Court. The Foundation seeks, among other things, a declaration from the Court that the Division violated the NVRA by "denying the Foundation the opportunity to inspect and copy the ERIC Deceased Data."[35] The Foundation also seeks a declaration that the Division violated the NVRA by "denying the Foundation the opportunity to inspect and copy

---

[31] Docket 1-3 at 3.

[32] Docket 1-3 at 2–3.

[33] Docket 1-3 at 3; *see also* 52 U.S.C. § 20510(b)(2) ("If the violation is not corrected within 90 days after receipt of a notice . . . the aggrieved person may bring a civil action . . . ."). The Foundation sent the notice letter via email on September 20, 2021, and the Lieutenant Governor received notice via USPS certified mail on October 4, 2021, so the NVRA afforded 90 days, a period that expired on December 19, 2021 (email), and on January 2, 2022 (certified mail). Docket 1 at 12, ¶¶ 43–46.

[34] Docket 1 at 12, ¶ 42.

[35] Docket 1 at 15, ¶ 1.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 8 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 8 of 25

deceased cancellation reports with voter identification numbers."[36]  The complaint is not entirely clear with respect to the injunctive relief it seeks, requesting simply that the Court order the Division to "provide the requested records . . .[,] including voter list maintenance records received from ERIC," without specifying whether the Foundation is seeking birth dates, voter identification numbers, or both.[37]

The Lieutenant Governor filed a Motion to Dismiss for Failure to State a Claim at Docket 40 that is now before the Court for determination.

## LEGAL STANDARD

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[38]  Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[39]

---

[36] Docket 1 at 15, ¶ 2.

[37] Docket 1 at 15, ¶ 4.

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[39] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) (citing *Twombly*, 550 U.S. at 555–56).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 9 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 9 of 25

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the Foundation brings a claim arising under federal law, alleging that the Lieutenant Governor violated Section 8(i) of the NVRA, 52 U.S.C. § 20507(i).

## DISCUSSION

### I. The Adequacy of the Foundation's Pre-Litigation Notice

To bring a civil action pursuant to the NVRA, "[a] person who is aggrieved by a violation . . . may provide written notice of the violation to the chief election official of the State involved."[40] Although the use of the term "may" suggests that notice is permissive rather than mandatory, courts have consistently held that pre-litigation notice is mandatory.[41] "If the violation is not corrected within 90 days after receipt of a notice . . . the aggrieved person may bring a civil action in an appropriate district court for declaratory and injunctive relief with respect to the

---

[40] 52 U.S.C. § 20510(b)(1).

[41] *See, e.g.*, *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1042–45 (9th Cir. 2015) (analyzing whether plaintiffs provided proper notice to determine if the plaintiffs had statutory standing); *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014) ("Although notice is framed here as permissive rather than mandatory, other NVRA provisions indicate that notice is mandatory."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 715 (S.D. Miss. 2014); *Am. C.R. Union v. Martinez-Rivera*, 166 F. Supp. 3d 799, 794–95 (W.D.Tex. 2015); *Cromwell v. Kobach*, 199 F. Supp. 3d 1292, 1310–12 (D. Kansas 2016). *But see Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997) (holding that plaintiffs did not have to provide notice where co-plaintiffs provided notice and additional notice would have been futile because the Governor of Michigan issued an order "for the clear purpose of officially refusing to comply with" the NVRA).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 10 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 10 of 25

violation."[42]  The purpose of this notice requirement is to "provide states . . . an opportunity to attempt compliance before facing litigation."[43]

The Division contends that the Foundation provided it with inadequate notice because the Foundation's notice letter does not state that the State's provision of unique voter ascension numbers instead of voter identification numbers constituted a NVRA violation, a claim the Foundation now makes in this action.[44] The Foundation responds that its notice letter adequately informed the Division that it sought all ERIC data and that the data it sought was not exempt from disclosure under the NVRA.[45]

The pre-litigation notice requirement is not as stringent as the Lieutenant Governor contends.  "District courts applying Section 20510 have found notice sufficient when it (1) sets forth the reasons that a defendant purportedly failed to comply with the NVRA, and (2) clearly communicates that a person is asserting a

---

[42] 52 U.S.C. § 20510(b)(2).

[43] *Scott*, 771 F.3d at 836 (quoting *ACORN*, 129 F.3d at 838); *see also* S. Rep. No. 103-6, at 21 (1993) ("An essential element of an effective civil enforcement program is a requirement for notice of any complaint regarding its implementation to the appropriate election officials together with a process for its administrative resolution before legal action may be commenced.").

[44] Docket 40 at 29; *compare* Docket 1-3 at 2 ("The Division of Elections provide[d] a 'list of deceased voters [the Division] removed from the voter registration list . . . .' However, the Division of Elections did not include dates of birth in the list."), *with* Docket 1 at 15, ¶ 2 (seeking declaration that the Division violated the NVRA by failing to provide voter identification numbers).  See also Docket 47 at 15, 19 (noting that the Foundation "continues to change and obscure both its first and second requests" and contending that the Foundation's "claims relating to its second request should be dismissed, for lack of notice and actual compliance").

[45] Docket 44 at 31–32.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 11 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 11 of 25

violation of the NVRA and intends to commence litigation if the violation is not timely addressed."[46]  When courts have found notice to be insufficient, it typically is because the plaintiff failed to provide any notice at all.[47]  The Lieutenant Governor did not identify any cases in which a plaintiff sent a pre-litigation notice letter that a reviewing court found to be inadequate notice;[48] nor did the Court independently identify any such case.

Applying those principles here, the Foundation's notice letter adequately apprised the Lieutenant Governor of the alleged NVRA violation in "fail[ing] to permit inspection and reproduction of public records," and specifically with respect to "all ERIC Data."[49]  And with respect to the second requirement, the notice letter "clearly communicate[d] that a person is asserting a violation of the NVRA and intend[ed] to commence litigation if the violation is not timely addressed"[50] by explaining that "this letter serves as statutory notice to you . . . that Alaska is in

---

[46] *Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Penn. 2019) (first citing *Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1334 (S.D. Fla. 2017); then citing *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1348 (N.D. Ga. 2016); and then citing *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 922 (S.D. Ind. 2012)).

[47] *See id.* (dismissing NVRA claim because "[t]he complaint [wa]s devoid of any allegations that the Foundation sent Secretary Torres, or that he received, written notice of the violation." (citation omitted)); *see also Cromwell v. Kobach*, 199 F. Supp. 3d 1292, 1311 (D. Kansas 2016) (finding notice requirement unmet because the plaintiffs "wholly fail[ed] to allege that they sent any notice to the State prior to filing suit").

[48] *See generally* Docket 40; Docket 47.

[49] Docket 1-3 at 1.

[50] *Pub. Int. Legal Found.*, 370 F. Supp. 3d at 457.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 12 of 25

Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 12 of 25

violation of the National Voter Registration Act" and that "[i]f the violations described herein are not cured in the time afford[ed] by law, [the Foundation] will have no choice but to pursue remedies in federal court."[51]

For the foregoing reasons, the Court finds that the Foundation adequately complied with the pre-litigation notice requirement of the NVRA, such that dismissal of this action on that basis is unwarranted.

## II. ERIC Data and the NVRA Disclosure Provision

A key issue in this case is one of statutory interpretation. The question is whether the ERIC data concerning deceased and potentially deceased voters are "records" subject to the disclosure provision of the NVRA, which requires the disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."[52] The Lieutenant Governor contends that the Foundation's complaint fails to state a claim because the plain language of the NVRA "does not require the Division to disclose the deceased voter reports it received from ERIC."[53] The Foundation responds that "[c]ourts in multiple circuits have

---

[51] Docket 1-3 at 1, 3.

[52] 52 U.S.C. § 20507(i)(1).

[53] Docket 40 at 11.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 13 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 13 of 25

interpreted the Public Disclosure Provision expansively," and the ERIC deceased voter reports "fit comfortably within the NVRA's reach."[54]

The question of whether ERIC's deceased voter reports are subject to the NVRA's disclosure provision appears to be one of first impression.[55] When interpreting a statute, a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous."[56] However, where the text is ambiguous, a court looks to the language and context of the entire statute, as well as to its "object and policy" of the statute.[57] "Then, [only] if the language of the statute is [still] unclear, we look to its legislative history."[58] In all cases, though, statutory text

---

[54] Docket 44 at 6, 8.

[55] The Foundation also sued two other states on nearly identical grounds, contending that the ERIC data is subject to disclosure under the NVRA. *Pub. Int. Legal Found., Inc. v. Evans*, No. 1:21-cv-03180 (D.D.C. filed Dec. 6, 2021); *Pub. Int. Legal Found., Inc. v. Griswold*, No. 1:21-cv-03384 (D. Colo. filed Dec. 16, 2021). The states have filed a motion to dismiss in both cases, but the district courts have not yet decided these motions on the merits.

[56] *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (citations omitted); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."(quotation marks omitted) (citation omitted)).

[57] *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) (citation omitted); *see also Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform that analysis.").

[58] *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 830–31 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) (quoting *Alarcon v. Keller Industries, Inc.*, 27 F.3d 386, 389 (9th Cir. 1994)); *see also Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (holding that legislative history should never "muddy the meaning of clear statutory language" (quotation marks omitted) (citation omitted)).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 14 of 25

is not reviewed in a vacuum, definitions are not dispositive, and the statute's terms must be considered in context.[59]

The Lieutenant Governor's interpretation hinges on what she characterizes as "unambiguous limiting language" in the statute: the terms "implementation," "program," and "activity."[60]  According to the Lieutenant Governor, the term "implementation" narrows the scope of the disclosure provision "to only those [records] 'relating to the processes a State implements to fulfill its NVRA obligations'" and excludes from its scope anything "more granular than process information."[61]  The Lieutenant Governor also maintains that the inclusion of the terms "programs" and "activities" demonstrates that the disclosure provision "applies to records 'relate[d] to fulfilling, performing, carrying out, or putting into effect by means of a definite plan or procedure (1) systems or (2) specific actions to ensure that the State's official list of individuals entitled to vote is current and accurate.'"[62]

So limited by these three terms, the Lieutenant Governor maintains that the disclosure provision "requires the Division to show *what* it is doing and *how*," but it does not require it to disclose the "granular" inputs from third-party reports

---

[59] *Yates v. United States*, 574 U.S. 526, 537 (2015).

[60] Docket 40 at 11–16.

[61] Docket 40 at 11–12 (quoting *Kemp*, 208 F. Supp. 3d at 1339).

[62] Docket 40 at 12 (quoting *Kemp*, 208 F. Supp. 3d at 1338).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 15 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 15 of 25

containing voters' sensitive personal information.[63]   For purposes of the Foundation's request, the Lieutenant Governor contends that the records subject to disclosure consist solely of the records of the voters it removed in 2019, 2020, and 2021, which it has already provided to the Foundation in response to its second request.[64]   By contrast, the Lieutenant Governor maintains that "[t]he inputs the Division considered, including ERIC's deceased voter reports, are not implementation records"; rather, the Division asserts that they are "third-party reports provided to the Division" that do not "contain any information regarding Division programs or activities, much less their implementation."[65]

In response, the Foundation emphasizes that the NVRA disclosure provision applies to "all" records, maintaining that "Congress chose 'all' to give the NVRA a sweeping reach, and that choice has enormous significance."[66]   The Foundation also contends that a "program" or "activity" is "one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are

---

[63] Docket 40 at 12–13 (quoting *Kemp*, 208 F. Supp. 3d at 1339).

[64] Docket 40 at 13; *see also* Docket 1 at 11, ¶ 34 ("The Alaska Division of Elections granted in part and denied in part the Foundation's second request" by providing "a list of deceased voters [the Division] removed from the voter registration list between January 1, 2019 and August 11, 2021."); Docket 1-2 at 1 ("In response to your second request, enclosed is a list of deceased voters [the Division] removed from the voter registration list between January 1, 2019 and August 11, 2021.")

[65] Docket 40 at 13–14.

[66] Docket 44 at 8.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 16 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 16 of 25

qualified or entitled to vote within the state."[67]  The Foundation maintains that "Alaska's membership in ERIC is a 'program' or 'activity' within the purview of the NVRA because it is conducted to make sure Alaska's eligible voter list is 'errorless' and contains the 'most recent' information for each registrant."[68]  The Foundation defines the term "to 'implement'" as "to 'fulfill' or 'carry out.'"[69]  The Foundation explains that "Alaska uses the ERIC Deceased Reports to correct or update voter registration records" and that "[b]y doing so, Alaska fulfills—at least in part—its federal (NVRA and HAVA) and state (Alaska Statutes) voter list maintenance obligations."[70]

The Court begins its analysis by considering  the common and ordinary meaning of the key terms in Section 8(i) at issue here: "all," "concerning," "implementation," "programs," and "activities."[71]  These terms, and especially the inclusive term "all," are broad in nature.  Their plain meaning favors providing access to the deceased voter records, which can fairly be considered "records" the Division uses to "implement[]" one or more of its "programs and activities" to ensure

---

[67] Docket 44 at 9 (citation omitted) (quoting *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 706 (E.D. Va. 2010)).

[68] Docket 44 at 10.

[69] Docket 44 at 10 (quoting *True the Vote*, 43 F. Supp. 3d at 719).

[70] Docket 44 at 10.

[71] 52 U.S.C. § 20507(i)(1).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 17 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 17 of 25

the accuracy of its eligible voter lists.[72]  Other courts also have broadly interpreted Section 8(i) to require the disclosure of records "relat[ing] to fulfilling, performing, carrying out, or putting into effect by means of a definite plan or procedure (1) systems or (2) specific actions to ensure that the State's official list of individuals entitled to vote is current and accurate."[73]  The Court finds those interpretations of the statute persuasive and further indicia of support for the Court's construction of the key terms' plain meaning.

The Lieutenant Governor nevertheless urges the Court to interpret the scope of the disclosure provision narrowly and limit it "to only those [records] 'relating to the processes a State implements to fulfill its NVRA obligations.'"[74]  However, this interpretation overlooks that the disclosure provision is subject to only two exceptions, providing that records should be disclosed "except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered."[75]  "[T]he

---

[72] 52 U.S.C. § 20507(i)(1).

[73] *Kemp*, 208 F. Supp. 3d at 1338; *see also True the Vote*, 43 F. Supp. 3d at 719–20 ("[R]ecords disclosable . . . must relate to specific plans, functions, or actions carried out for the purposes of ensuring official lists of eligible voters are 'accurate' and current.'  A list of voters is 'accurate' if it is 'free from error or defect' and it is 'current' if it is 'most recent.'" (footnotes omitted) (citations omitted)); *Pub. Int. Legal Found.*, 431 F. Supp. 3d at 559 ("[T]he Disclosure Provision requires states to disclose 'all records concerning the implementation' of a schedule or system designed to serve a specific end, or a particular function or operation, 'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" (citations omitted) (quoting 52 U.S.C. § 20507(i)(1))).

[74] Docket 40 at 11–12 (quoting *Kemp*, 208 F. Supp. 3d at 1339).

[75] 52 U.S.C. § 20507(i)(1).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 18 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 18 of 25

enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded."[76] Here, neither of the NVRA's two specific exclusions apply to information about a voter's death, which suggests that Congress intended for this information to be disclosed.[77] Indeed, one court interpreting this provision observed that "[t]he contrast between the broad mandate to disclose 'all' records and the tailored protection of two types of records implies that Congress crafted this provision carefully."[78]

The Court sees no reason to deviate from the plain meaning of the disclosure provision's key terms, other courts' interpretation of those terms in similar contexts, and the implication of Congress's inclusion of specific exceptions to the disclosure requirement. Additionally, a broad reading of the NVRA's disclosure provision "promotes the integrity of the voting process and ensures a public vehicle for ensuring accurate and current voter rolls."[79] Limiting the disclosure requirement to a set of general process implementation records without the production of the underlying data to show the inputs of the processes and

---

[76] *Blausey v. U.S. Tr.*, 552 F.3d 1123, 1133 (9th Cir. 2009) (citing 2A Norman Singer & Shambie Singer, *Sutherland Statutory Construction* § 47.23).

[77] *See id.*

[78] *Pub. Int. Legal Found.*, 431 F. Supp. 3d at 560; *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 336 (4th Cir. 2012) ("Because the requested applications do not fall within either of these two exceptions—and because they are covered by Section 8(i)(1)'s general mandate—they must be made 'available for public inspection . . . .'" (quoting 52 U.S.C. § 20507(i)(1))).

[79] *Pub. Int. Legal Found.*, 431 F. Supp. 3d at 559 (citing 52 U.S.C. § 20501(b)(3), (4)).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 19 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 19 of 25

activities put in place would hinder the public's ability to "protect the integrity of the electoral process" in a way that accomplishes the purposes of the statute.[80]

Accordingly, the Court finds that the NVRA's disclosure provision does not categorically exclude the ERIC data from public disclosure. The Foundation has plausibly alleged in its complaint that the ERIC data falls within the reach of the disclosure provision because the review of the ERIC data is an "activity" or "program" that the State has "implement[ed]" to determine the continued eligibility of registered voters for the purpose "of ensuring the accuracy and currency of official lists of eligible voters."[81]

### III. Limitations Imposed by Other Laws

The Lieutenant Governor next asserts that the NVRA must be read in conjunction with the various statutes enacted by Congress to protect the privacy of individuals and confidential information held by certain governmental agencies.[82] The Lieutenant Governor contends that the Freedom of Information

---

[80] 52 U.S.C. § 20501(b)(3); *cf. Kemp*, 208 F. Supp. 3d at 1340.

[81] 52 U.S.C. § 20507(i)(1). The Court does not reach the legislative history identified by the Lieutenant Governor because the text of the disclosure provision in the context of the rest of the NVRA , and particularly the act's object and policy, is clear. *Glickman*, 83 F.3d at 830–31 (quoting *Alarcon*, 27 F.3d at 389). Regardless, several courts have rejected the Lieutenant Governor's argument based on the legislative history that the disclosure provision is only intended to require the disclosure of voter names and addresses. Docket 40 at 17–20. This is because Congress added the terms "shall include" in the text of the disclosure provision and "the term 'shall include' sets 'a floor, not a ceiling.'" *See, e.g., Long*, 682 F.3d at 337 (citation omitted).

[82] Docket 40 at 20–25.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 20 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 20 of 25

Act, the Privacy Act, and the Bipartisan Budget Act of 2013 all prohibit the disclosure of ERIC's deceased voter reports.[83]

Several courts have recognized that the disclosure provision of the NVRA must yield to other federal laws that protect sensitive personal information from disclosure. In *Public Interest Legal Foundation v. Boockvar*, for example, a district court found that the Driver's Privacy Protection Act, 18 U.S.C. § 2721, prohibits States from revealing protected personal information contained in state motor vehicle department records notwithstanding language in the NVRA that might otherwise allow disclosure.[84] Similarly, in *Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*, the Fourth Circuit explained that "the term 'all records' in the disclosure provision does not encompass any relevant record from any source whatsoever, but must be read in conjunction with the various statutes enacted by Congress to protect the privacy of individuals and confidential information held by certain governmental agencies."[85] In harmonizing the NVRA with the Privacy Act, the Fourth Circuit held that "a district court can order redaction of 'uniquely sensitive information' in otherwise disclosable documents."[86]

---

[83] Docket 40 at 20–25.

[84] 431 F. Supp. 3d at 562–63.

[85] 996 F.3d 257, 264 (4th Cir. 2021) (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988)).

[86] *Id.* at 268 (quoting *Project Vote*, 682 F.3d at 339).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 21 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 21 of 25

It appears that the Bipartisan Budget Act of 2013 would prohibit blanket disclosure of the ERIC data during the three-year period beginning on the date of the individual's death. Congress passed the Bipartisan Budget Act 20 years after the NVRA, and "Congress is, of course, presumed to know existing law pertinent to any new legislation it enacts."[87] The act provides that "[t]he Secretary of Commerce shall not disclose to any person information contained on the [Limited Access] Death Master File with respect to any deceased individual at any time during the 3-calendar-year period beginning on the date of the individual's death, unless such person is certified."[88] The act also sets forth the criteria for certification and imposes penalties on anyone who has been certified and discloses the Limited Access Death Master File to someone who is not certified.[89] Moreover, the implementing regulations provide that a certified person "shall not . . . [d]isclose such deceased individual's Limited Access [Death Master File] to any person other than a person who meets the [certification] requirements . . . of this section."[90]

The Court finds that, to the extent ERIC used the Limited Access Death Master File to create the data that is at issue in this case, the Bipartisan Budget Act of 2013 prevents disclosure of that data for a three-year period beginning after

---

[87] *United States v. LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991) (citation omitted).

[88] 42 U.S.C. § 1306c(a); 15 C.F.R. § 1110.102.

[89] *See* 42 U.S.C. § 1306c(b) (certification program); *id.* § 1306c(c) (penalties).

[90] 15 C.F.R. § 1110.102(a)(4)(i).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 22 of 25

Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 22 of 25

the death of an individual.[91]  Still, any potential conflict between the NVRA and the Bipartisan Budget Act of 2013 likely can be harmonized by requiring the exclusion of sensitive personal information in the Death Master File from the scope of the NVRA's disclosure provision.  This requirement respects the balance that Congress struck between the transparency of states' voter registration processes and individual voter's privacy interests.  As a result, the Court will allow the parties to proceed with discovery, subject to any appropriate redactions, and present any further issues to the Court with a more developed record.  If necessary, the Court then can discern what information the Division obtained in the ERIC reports that warrants nondisclosure under other federal laws and what information should be disclosed under the NVRA.[92]

## IV.  Unique Voter Identification Numbers

The Lieutenant Governor also contends that the voter identification numbers are protected by Alaska law, specifically Alaska Statute §15.07.195, and that law is not preempted by the NVRA.[93]  This statute provides that certain "information set out in state voter registration records" is "confidential" and provides that this

---

[91] 42 U.S.C. § 1306c(a).

[92] *See Pub. Int. Legal Found.*, 966 F. 3d at 268 (remanding with instructions for district court to determine which sensitive information should be redacted from information otherwise subject to disclosure pursuant to the NVRA).

[93] Docket 40 at 30–31.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 23 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 23 of 25

information "is not open to public inspection."[94]  This includes not only the voter's "date of birth" but also "the voter's voter identification number."[95]

The Foundation has made a plausible claim that State law may be preempted by the NVRA, but the parties have provided only limited briefing on this issue.[96]  The record currently before the Court is undeveloped on whether the voter identification numbers, as distinct from the ascension numbers, constitute sensitive information that implicates special privacy concerns warranting exclusion from disclosure consistent with the NVRA.  Dismissal of the complaint on the limited record on this issue is unwarranted.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that defendant Lieutenant Governor's Motion to Dismiss at Docket 40 is DENIED.  The Foundation has

---

[94] Alaska Stat. § 15.07.195(a).

[95] *Id.* § 15.07.195(a)(1), (4).

[96] Docket 44 at 29 (first citing *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 9 (2013); then citing *ACORN v. Edgar*, 880 F. Supp. 1215, 1222 (N.D. Ill. 1995); then citing *Project Vote/Voting For Am., Inc. v. Long*, 813 F. Supp. 2d 738, 743 (E.D. Va. 2011), *aff'd and remanded*, 682 F.3d 331 (4th Cir. 2012); then citing *Pub. Int. Legal Found., Inc. v. Bellows*, No. 1:20-cv-00061-GZS, 2023 WL 2663827, at \*9 (D. Me. Mar. 28, 2023); and then citing *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 943 (C.D. Ill. 2022), *clarified on denial of reconsideration*, No. 20-cv-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022)).  *But see True the Vote*, 43 F. Supp. 3d at 740 (holding that the NVRA does not preempt state laws that require redaction of voter's personal information because there is no conflict between the NVRA and the state laws); *Kemp*, 208 F. Supp. 3d at 1345 ("[I]t is illogical that in enacting the NVRA, Congress intended to erode Federal and State law protecting against the disclosure of private, personal information." (citation omitted)).

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 24 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 24 of 25

plausibly stated a claim for relief under the NVRA's disclosure provision. That provision does not contain a blanket exemption of all ERIC death data provided to the Division of Elections; instead, it "requires a more exacting and tailored analysis" that cannot be undertaken on the current record.[97]

DATED this 17th day of May 2023, at Anchorage, Alaska.

*/s/ Sharon Gleason*
UNITED STATES DISTRICT JUDGE

---

[97] *N.C. State Bd. of Elections*, 996 F.3d at 268.

Case No. 1:22-cv-00001-SLG, *Pub. Int. Legal Found., Inc. v. Dahlstrom*
Order re Motion to Dismiss
Page 25 of 25
Case 1:22-cv-00001-SLG   Document 53   Filed 05/17/23   Page 25 of 25